**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WALTER HARRELL, Petitioner, v. STATE OF NEW JERSEY, et al., Respondents. | Civil No. 05-4281 (FLW) **O P I N I O N** |

**APPEARANCES:**

Walter Harrell, Pro Se
Prison #000354
STU- Annex
P.O. Box 905
Avenel, NJ 07001

Mark P. Stalford
Monmouth County Prosecutor's Office
Director, Appellate Section
71 Monument Park
Freehold, NJ 07728-1789
Attorney for Respondents

**WOLFSON, District Judge**

Petitioner, Walter Harrell, filed the within petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. Respondents filed a Response to the Petition on January 27, 2006. On August 22, 2006, Petitioner filed a Reply Brief. The Court has considered all submissions. For the reasons set forth below, the Court denies the Petition.

## BACKGROUND

The charges for which Petitioner was convicted stem from a series of sexual assaults against his niece over a period of three years, during which time the victim was between the ages of seven and nine.

A Monmouth County Grand Jury indicted Petitioner on three counts, including: first-degree aggravated sexual assault, contrary to N.J.S.A. 2C:14-2a(1)(count one); second-degree sexual assault, contrary to N.J.S.A. 2C:14-2b (count two); and third-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4a (count three).

Petitioner was tried before a jury from October 17-19, 1995. Petitioner was acquitted on count one (aggravated sexual assault), and was found guilty of counts two and three.

On May 31, 1996, Petitioner was sentenced to an aggregate sentence of ten years with five years of parole ineligibility on the sexual assault conviction, consecutive to a five-year custodial term with two and one-half years parole ineligibility on the child endangerment conviction.

Petitioner appealed his convictions and sentence to the Superior Court of New Jersey, Appellate Division ("Appellate Division"). While his appeal was pending, Petitioner filed a post-conviction relief motion ("PCR") in trial court, which was denied on May 30, 1997 due to the pending appeal. On May 4,

1998, the Appellate Division affirmed the convictions and sentences without discussion. See State v. W.H., A-0735-96T4. Petitioner petitioned the New Jersey Supreme Court for certification, which was denied on September 10, 1998.

In February of 1999, Petitioner submitted a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to this district court. The petition was dismissed, without prejudice, for failure to exhaust state court remedies.

In November of 1999, Petitioner filed a second PCR motion. It was denied in September of 2000 without prejudice. In May of 2001, Petitioner filed a third PCR motion. It was eventually denied on April 2, 2002. Petitioner appealed the denial of the third PCR to the Appellate Division, who affirmed the decision on November 12, 2004. The New Jersey Supreme Court denied Petitioner's petition for certification on May 13, 2005.

The instant petition was filed on August 30, 2005 (docket entry 1). On September 26, 2005, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000)(docket entry 2). On January 27, 2006, Respondents filed an Answer and the state court record (docket entry 9). On August 22, 2006, Petitioner submitted a reply brief in response to the Answer (docket entry 13).

## DISCUSSION

### A. Petitioner's Claims.

Petitioner asserts the following arguments for habeas relief:

1. Ineffective assistance of trial counsel (Grounds 1 and 4).

2. Prosecutorial misconduct in grand jury proceedings (Ground 2).

3. Petitioner should have been afforded an evidentiary hearing on his PCR motion (Ground 3).

See Petition for Writ of Habeas Corpus, ¶ 12 and attachments.

### B. Standards Governing Petitioner's Claims.

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus. The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1). The Court analyzed subsection 1 as two clauses: the "contrary to" clause and the "unreasonable application" clause. The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case." Id. at 413. Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999). Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record. See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id. Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing

evidence. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)). "A finding that is well-supported and subject to the presumption of correctness is not unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**C. Ineffective Assistance of Counsel Claims (Grounds 1 and 4).**

1. The *Strickland* standard

To begin, the "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct. See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001). Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

> counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, the petitioner must also show that counsel's substandard performance actually prejudiced his defense. See Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. See id. at 695-96. Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim. See id. at 697; see also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

"[A]n attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation." United States v. Kauffman, 109 F.3d 186, 190

(3d Cir. 1997); Lewis v. Mazurkiewicz, 915 F.2d 106, 111 (3d Cir. 1990)(counsel has a duty to investigate or to make a reasonable decision that makes particular investigations unnecessary). When assessing an ineffectiveness claim based on failure to investigate, a court must assess the decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691; Kimmelman v. Morrison, 477 U.S. 365, 384 (1986); see also Duncan v. Morton, 256 F.3d 189, 201 (3d Cir.), cert. denied, 534 U.S. 919 (2001). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 691-92. Even if counsel was deficient in his decision not to investigate, a petitioner must show a reasonable likelihood that, but for the deficiency, the result of the proceeding would have been different. See Lewis, 915 F.2d at 115.

2. Petitioner's Claims

In Ground One of his Petition, Petitioner notes that he was represented prior to trial by two attorneys. The first attorney, Mr. Merced, only consulted with him one time and tried to convince Petitioner to plead guilty based on the age of the victim, the offenses charged, and Petitioner's past record. Petitioner also states that he filed a motion for grand jury

transcripts, and that Mr. Merced did not provide the transcripts. Petitioner admits that he later learned that the transcripts he requested were non-existent.

Petitioner asked Mr. Merced to resign and was then represented by Mr. Eisler. Petitioner states that he told Mr. Eisler about alibi witnesses,[1] and Mr. Eisler did not investigate. After Petitioner described his witnesses to Mr. Eisler, Mr. Eisler stated that the issues didn't "bear fruit." Mr. Eisler also tried to convince Petitioner to plead guilty, and did not assist Petitioner in obtaining transcripts.

In Ground Four of the Petition, Petitioner states that trial counsel did not present a defense, did not vigorously cross-examine witnesses, and did not "present Petitioner to the jury as an innocent man." Petitioner states that counsel told him that "he had a legal strategy that would combat the case of the State." When a state worker from the Division of Youth and

[1] Petitioner informed his attorneys about the following information and witnesses: (a) Petitioner's father could testify that Petitioner was not living at the victim's house and did not babysit or pick up the victim from school; (b) Petitioner's employment records could verify that Petitioner had no time to babysit or pick up the victim from school; (c) staff at a shelter where Petitioner was staying could verify that he went to work everyday; (d) Petitioner's girlfriend could testify that Petitioner worked everyday and did not commit the offenses; (e) "school records, employment records and residential records" could be obtained that "would clearly show that petitioner was telling the truth;" (f) two parole officers could verify Petitioner's employment and residence; and (g) Petitioner was with a female companion when he visited the victim's home during one occasion. (See Attachment to Petition, Ground One).

Family Services ("DYFS"), who had previously told Petitioner of some problems with the case against him, was excused as a state witness, Petitioner requested that counsel retain her as a defense witness, but counsel refused. No DYFS report was submitted, even though the DYFS worker was involved in the case.

The Court notes that Petitioner was acquitted of the most serious charge against him, aggravated sexual assault.

3. Appellate Division decision

The Appellate Division examined Petitioner's claims during the appeal of his PCR motion. Citing Strickland, the Appellate Division reiterated the opinion of the PCR court, stating:

> Judge Kennedy [the PCR judge] considered counsels' decision to have matters of strategy and defendant's claims of exculpatory evidence to be speculative. The judge found that "[i]t has not been shown that either defendant's father or [shelter staff worker] Karen would have had personal knowledge of defendant's whereabouts during the times in question." Consequently, the judge concluded that there was "not a reasonable probability that the result of the proceeding would have been different" had these witnesses been called. We agree with Judge Kennedy.
>
> The indictment charged defendant with offenses occurring "between the years 1990 and 1992." No witness or record suggested by defendant could establish that defendant had no opportunity to commit the crimes. Even assuming that counsel did not obtain the grand jury transcript, defendant has not established what benefit could have come from its possession.
>
> In short, after reviewing the record in light of the arguments made and the pertinent law, we conclude, as did Judge Kennedy, that even if counsel had performed as defendant now argues, the result would have been no different. An insufficient showing has

> been made to justify any evidentiary hearing, and the claims advanced are without sufficient merit to warrant further discussion.

State v. Harrell, A-5403-01T4 (Nov. 12, 2004)(internal citations omitted).

4. Analysis

Petitioner has demonstrated neither that counsel's performance was deficient, nor that the results of the trial would have been different had the attorney acted as Petitioner now suggests.

First, Petitioner's counsel did not perform deficiently. A review of the trial transcripts reveals that Petitioner's counsel vigorously defended Petitioner. For example, counsel zealously cross-examined the witnesses, including the minor victim. Counsel pointed out an inconsistency in the victim's grand jury testimony with the victim's trial testimony. Counsel attempted to show that the victim fabricated her story based on a story she had heard from a close friend, and based on a role playing scenario she had witnessed at school that prompted the victim's revelations of the sexual incidents. After raising these issues during the course of the trial, counsel also raised these issues in summation in an attempt to put a reasonable doubt into the jurors' minds. Counsel's strategy was clear from a review of the transcripts. The jury acquitted Petitioner on the aggravated sexual assault count, which demonstrates counsel's effectiveness.

Counsel’s decision not to call the alibi witnesses as suggested by Petitioner was clearly a strategic decision. Counsel considered Petitioner’s request, and then concluded that the witnesses would not “bear fruit” on the defense’s case. Further, counsel cannot be said to be deficient for advising Petitioner that a plea would be in his best interest.

Regardless, Petitioner has not demonstrated that counsel’s actions prejudiced his defense. As the state courts determined that the alibi witnesses would not have materially aided the defense, Petitioner cannot establish prejudice based upon counsel’s failure to subpoena the witnesses. Petitioner’s conviction was a result of a credibility determination made by the jury, and not a result of counsel’s allegedly deficient performance.

Further, as the state courts applied the correct Strickland standard to Petitioner’s claims and reasonably applied the facts, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." These grounds for a writ of habeas corpus, are therefore denied.

**D. Petitioner's Claim Regarding Prosecutorial Misconduct (Ground 2).**

In Ground Two, Petitioner argues that upon reviewing the minutes of the grand jury, no charge on the law was made to the grand jury. He states that the prosecutor engaged in prosecutorial misconduct "by using evidence not of fact relating to the instant case, but assumingly [sic] information from petitioner's past records to obtain an indictment."

Petitioner presented this issue to the trial court after he was convicted. The trial court stated:

> The defendant contends that, because the court stenographer did not record the Prosecutor's instructions to the Grand Jury, the indictment should be dismissed. The defendant asserts that, because the court stenographer did not record the Prosecutor's instructions, he can not determine if the instructions were erroneous.
>
> The procedural requirements for motions to dismiss are provided in [New Jersey Court] Rule 3:10-2. This Rule states the defenses and objections which must be raised before trial. The burden to prove good cause is difficult to overcome.
>
> * * *
>
> . . . under Rule 3:10-2, this motion should have been made before the trial. The failure to read the Grand Jury transcript is no[t] good cause for counsel's failure to move to dismiss the indictment before the trial.

See Transcript, September 13, 1996, at p. 6.

Generally, deficiencies in state grand jury proceedings are not grounds for relief under § 2254. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989). In Lopez, the Court of Appeals for

the Second Circuit held that a claim regarding the legal instruction given to the grand jury may not be raised in a habeas proceeding under § 2254 "where a properly instructed petit jury heard all relevant evidence and convicted." Id. at 31. The Lopez conclusion flows from United States v. Mechanik, 475 U.S. 66 (1986), in which the Supreme Court held that a violation of Fed. R. Crim. P. 6(d) (which governs who may be present while the grand jury is in session, deliberating, or voting), discovered only at trial, did not justify relief after the petit jury had rendered its verdict.

> [T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceedings connected with the charging decision was harmless beyond a reasonable doubt.

Mechanik, 475 U.S. at 70 (footnote omitted); see also United States v. Console, 13 F.3d 641, 671-72 (3d Cir. 1993) (with the exception of a claim of racial discrimination in the selection of grand jurors, a petit jury's guilty verdict renders harmless any prosecutorial misconduct before the indicting grand jury) (citing Vasquez v. Hillery, 474 U.S. 254 (1986)). Thus, to the extent there were any deficiencies in the grand jury proceedings, they must be considered harmless. Petitioner is not entitled to relief on these claims.

**E. Petitioner's Claim Regarding PCR Court's Denial of Hearing (Ground 3).**

Petitioner argues in Ground Three that the PCR court dismissed his PCR motion purely on bias and was prejudicial to Petitioner. The Appellate Division examined this claim on appeal of Petitioner's PCR denial, and found that "[a]n insufficient showing has been made to justify any evidentiary hearing . . . ." State v. Harrell, A-5403-01T4 (Nov. 12, 2004).

It has long been established that habeas corpus relief is intended only to address claims attacking underlying state convictions, not matters collateral to those convictions. See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998), cert. denied, 526 U.S. 1065 (1999). In Hassine, the Third Circuit held that "[t]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation." Id.; see also Lambert v. Blackwell, 2003 WL 1718511 at *35 (E.D. Pa. Apr. 1, 2003)("Lambert's claims of errors by the [post-conviction relief] court fail to assert viable federal habeas claims," citing Hassine, 160 F.3d at 954); Rollins v. Snyder, 2002 WL 226618 at *5 (D. Del. Feb. 13, 2002)("Rollins' claims based on the Delaware courts' actions in his [post conviction proceedings] are not cognizable on federal habeas review"). Unless state

collateral review violates some independent constitutional right, such as the Equal Protection Clause, infirmities in state habeas proceedings are not cognizable under § 2254 and do not warrant federal habeas relief. See, e.g., Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir.), cert. denied, 121 S. Ct. 477 (2001); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997), cert. denied, 525 U.S. 903 (1998); Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir.), cert. denied, 513 U.S. 983 (1994); Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993); Bryant v. Maryland, 848 F.2d 492, 492 (4th Cir. 1988); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987); Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986). But see, Dickerson v. Walsh, 750 F.2d 150, 153 (1st Cir. 1984) (noting prevailing rule and concluding that federal habeas was proper avenue for attacking state post-conviction proceedings).

In the instant case, Petitioner's claim that he should have been permitted a hearing on his PCR claims are without merit, as his treatment during PCR proceedings is not cognizable in a federal habeas proceeding.

**CONCLUSION**

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied. The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the

denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

S/Freda L. Wolfson
FREDA L. WOLFSON
United States District Judge

Dated: January 9, 2007